IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROXY HOME IMPROVEMENT, LLC, ET AL. | ) ) ) | Case No. 1:17-cv-01817 |
| Plaintiffs, | ) ) ) | MAGISTRATE JUDGE |
| v. | ) ) | THOMAS M. PARKER |
| MERCEDES-BENZ USA, LLC, | ) ) | **ORDER** |
| Defendant. | ) ) | |

I. **Introduction and Procedural Background**

Plaintiffs Roxy Home Improvement LLC ("RHI") and Ovidiu Radu ("Radu") instituted this action against Mercedes-Benz USA, LLC ("MBUSA") on July 28, 2017 in Cuyahoga County Common Pleas Court. *See* ECF Doc. 1-1, Page ID# 6-11. Plaintiffs allege causes of action for breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose in violation of the Ohio Uniform Commercial Code ("UCC") (Count 1) and breach of implied warranty of merchantability and of fitness for a particular purpose sounding in tort (Count II). *See* ECF Doc. 1-1, Page ID# 9-11. Plaintiffs allege that the 2015 Van and 2016 Van ("the vehicles") plaintiffs purchased from Mercedes-Benz of North Olmsted "could not be utilized for the purposes intended by Plaintiff at the time of acquisition," were "worthless and/or substantially impaired," and the "defects and nonconformities exhibited

by both vans constitute a breach of contractual, statutory and/or common law obligations of [MBUSA]." *See* ECF Docs. 1-1 and 15, Page ID# 7-10, 93.

Counts I and II allege violations of Ohio statutory and common law, but MBUSA removed the case to this court under 28 U.S.C § 1441(a) and pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the complaint (ECF Doc. 1-1) could be read to indicate that the amount in controversy exceeds $75,000. *See* ECF Doc. 1.

MBUSA moved for partial judgment on the pleadings (ECF Doc. 15), contending that Radu lacks standing to assert his claims against MBUSA and the economic loss doctrine bars plaintiffs' tort claims because the parties' obligations are governed by contract. *See* ECF Doc. 15, Page ID# 92. Plaintiffs responded in opposition (ECF Doc. 16) on February 14, 2018, arguing that Radu has standing because he suffered distinct injuries separate from those of RHI and plaintiffs' tort claim is not barred by the economic loss doctrine. *See* ECF Doc. 16. On February 28, 2018, MBUSA filed a reply brief. *See* ECF Doc. 17.

On March 8, 2018, the court ordered the parties to brief two issues: (1) whether Radu was a third-party beneficiary to the purchase contracts; and (2) whether Radu's expenditures for repairs to the vehicles can be offered as proof of RHI's damages from its claims of breach of express warranty, implied warranty of merchantability, and/or implied warranty of fitness for a particular purpose under the Ohio Uniform Commercial Code (Count I in ECF Doc. 1-1). *See* ECF Doc. 18, Page ID# 116. Plaintiffs briefed these issues on March 15, 2018. ECF Doc. 19. And MBUSA did so on March 22, 2018. ECF Doc. 20.

Because Plaintiff Ovidiu Radu has failed to allege facts showing that he has standing to bring this suit and because the economic loss doctrine bars plaintiffs' implied warranty in tort claims, the court will GRANT MBUSA's motion for partial judgment on the pleadings.

2

**II.     Factual History and Procedural History**

The following facts are undisputed.  On or about January 28, 2016, RHI purchased a 2015 Mercedes-Benz Sprinter Cargo Van from Mercedes-Benz of North Olmsted bearing the vehicle identification number WD3PE8DC3F5990795 (the "2015 van").  ECF Docs. 1-1 and 15, Page ID# 7, 93.  The total price of the 2015 van was approximately $49,686.50 and it came with a standard 4-year/50,000-mile limited warranty.  ECF Doc. 4, Page ID# 25.  On or about April 11, 2017, RHI returned to Mercedes-Benz of North Olmstead and traded in the 2015 Van for a 2016 Mercedes-Benz Sprinter Cargo Van bearing the vehicle identification number WD3PE7DD8GP350221 (the "2016 van").  ECF Docs. 1-1 and 15, Page ID# 8, 93.  The price of the 2016 van was approximately $55,186.00 and it came with a standard 4-year/50,000-mile limited warranty.  ECF Doc. 4, Page ID# 26.

**III.    Law and Analysis**

   **A.     Judgment on the Pleadings Standard**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c). The judgment on the pleadings standard under Rule 12(c) is the same as that which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  "Under that standard, [courts] construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 336 (6th Cir. 2007).  In ruling on a Rule 12(c) motion, courts consider all available pleadings, including the complaint and the answer.  *Turk v. Oiler*,

732 F. Supp.2d 758, 764 (N.D. Ohio 2010). Courts may also consider any documents attached to, incorporated by, or referred to in the pleadings. *Id*.

Federal Rule of Civil Procedure 12(d) deals with the result of presenting matters outside the pleadings. That rule states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In the Sixth Circuit, "the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir.2006).

### B. Standing of Plaintiff Ovidiu Radu

When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action. *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *VFS Leasing Co. v. J & L Trucking, Inc.*, No. 1:09-CV-2942, 2011 WL 3439525, at *3 (N.D. Ohio Aug. 5, 2011) (citing *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir.1999)). "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 793 (6th Cir. 2006). Further, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P.

17(a)(1). To determine the real party in interest, Ohio courts determine who is entitled to damages. *Young v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 88 Ohio App. 3d 12, 623 N.E.2d 94, 97 (8th Dist.1993).

MBUSA argues that Radu lacks standing to sue for any alleged defects to the vehicles and his claims fail as a matter of law, because he is not a party to any contract with MBUSA for the vehicles and is not a "real party in interest." ECF Docs. 15 and 17, Page ID# 94. MBUSA argues Radu is not a real party in interest because RHI purchased the 2015 Van and the 2016 Van and Radu neither acquired an ownership interest in the vehicles nor entered into a contract with MBUSA for either vehicle. ECF Doc. 15, Page ID# 95 (citing ECF Docs. 4, 4-1, and 4-2). MBUSA argues that Radu cannot assert RHI's legal rights and interests because his ownership status in RHI "'does not give him standing to sue for alleged harms suffered by [the company] alone.'" *Id*. at 95 (quoting *VFS Leasing Co. v. J & L Trucking, Inc.*, No. 1:09-CV-2942, 2011 WL 3439525, at *3. MBUSA further argues that RHI is the only party capable of suffering the damages plaintiffs allege, including any out-of-pocket expenses for a rental vehicle or cleaning services. ECF Doc. 17 (citing ECF Doc. 16, Section B).

Radu acknowledges that he is not a party to the purchase contracts between RHI and Mercedes-Benz of North Olmsted for the vehicles ("purchase contracts"). ECF Doc. 19. Radu claims that he is an incidental beneficiary, but concedes that an incidental beneficiary cannot recover from the promisor under the purchase contracts. *Id*. Thus, Radu cannot assert that he has standing pursuant to a contract between MBUSA and himself for either vehicle.

Radu instead argues that he has standing to bring the present claims because he "has suffered a concrete and particularized injury." ECF Doc 16, at 1-2. Radu attempts to support

this argument by alleging facts through attorney argument that were neither alleged in the pleadings nor presented in any exhibits submitted with the pleadings.

MBUSA argues that plaintiffs' arguments "attempt to impermissibly expand Article III and Fed. R. Civ. P. 17 standing requirements and rely on facts that are outside of the pleadings." ECF Doc. 17. MBUSA argues that plaintiffs' references to alleged injuries outside the pleadings are improper under Rule 12(c), because "[n]owhere in [p]laintiffs' [c]omplaint does it allege any facts pertaining to verbal harassment or a 'personal attack on Radu' by any MBUSA employee, nor does it assert any claims regarding the same." *Id*.

MBUSA's argument is correct. The Buyers Orders (ECF Docs. 4-1 and 4-2) attached as exhibits to MBUSA's answer (ECF Doc. 4) show that the corporate entity, RHI, purchased the vehicles at issue, not Radu. *See* ECF Docs. 4-1 and 4-2, Page ID# 34-35. Thus, RHI would have received any express or implied warranties regarding the vehicles, not Radu. Plaintiffs' complaint also does not allege with specificity any damages particular to Radu. *See* ECF Doc. 1-1. Accordingly, the court finds that plaintiffs have failed to allege facts sufficient to show that Radu had standing to bring this suit.

The court will not convert this Rule 12(c) motion into a motion for summary judgment and therefore rejects and declines to consider any matters outside the pleadings. *C.f. Bd. of Trustees of Cleveland Asbestos Workers Pension Fund v. Berry Pipe & Equip. Insulation Co*., No. 1:08-CV-01082, 2008 WL 4239156, at *3 (N.D. Ohio Sept. 10, 2008), *Wilson v. Karnes*, No. 2-06-CV-392, 2007 WL 4207154, at *3 (S.D. Ohio Nov. 26, 2007). The court notes that plaintiffs rely solely on attorney argument to allege their additional facts. *C.f. Pippen v. Georgia-Pac.*, LLC, No. 1:07-CV-1565-BBM/AJB, 2008 WL 11336177, at *12 (N.D. Ga. May 21, 2008) (declining to convert a 12(b)(6) motion to a motion for summary judgment because the

party relied on its counsel's argument to assert certain allegations and did not submit affidavits or other admissible evidence), *adopted by*, No. 1:07-CV-1565-BBM, 2008 WL 11343590 (N.D. Ga. June 18, 2008); *see also Lefkowtiz v. Scytl USA*, No. 15:CV-05005-JSC, 2016 WL 537952, at *1 n. 1 (N.D. Cal. Feb. 11, 2016). Here plaintiffs did not submit a statement of undisputed material facts or affidavits setting forth facts not alleged in the pleadings as parties have done in other cases in which courts decided to convert Rule 12(c) motions into motions for summary judgment. *See e.g. Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494 (6th Cir. 2006) (plaintiff presented two affidavits on defendants' motion for judgment on the pleadings, which the district court did not exclude).

Accordingly, the Counts I and II, claims asserted by Ovidiu Radu, are DISMISSED WITH PREJUDICE. This decision does not prevent RHI from attempting to use evidence of any expenditures its agent Ovidiu Radu may have made to repair the vehicles as proof of RHI's damages.

### C. Plaintiffs' Implied Warranty in Tort Claim

MBUSA argues that plaintiffs' Count II tort claims fail as a matter of law because Count II is a merely a restatement of plaintiff's contract-based claims using tort language. *See* ECF Doc. 15, Page ID# 96. MBUSA notes that both Counts I and II "are near-identical claims premised on the same sets of facts" and utilize much of the exact same language. *Id*. at 96-97 (citing ECF Doc. 1-1, ¶¶ 17-19, 21, 23-26). MBUSA argues that the economic loss doctrine bars plaintiffs from recovering purely economic damages in a tort action based upon MBUSA's alleged breach of warranties. *See* ECF Doc. 15, Page ID# 97-98. MBUSA also argues that plaintiffs' implied warranty in tort claim fails as a matter of law because plaintiffs have not

7

argued that MBUSA owed them an exclusive duty in tort. ECF Doc. 17 (citing *Fed. Ins. Co. v. Benchmark Bank*, No. 2:17-CV-135, 2018 WL 527285, at *8 (S.D. Ohio Jan. 24, 2018)).

Plaintiffs counter that under Ohio case law the economic loss rule does not bar an implied warranty in tort claim. *See* ECF Doc. 16. Plaintiffs argue that "in Ohio an implied warranty in tort claim can be maintained by a commercial party, against a commercial party, for purely economic loss." *Id*. The court notes that plaintiffs have cited "*Caterpillar Financial Services v. Harold Tatman & Son's, Enterprises, Inc.,..*" to support their arguments, but failed to provide a complete citation for the decision.

Generally, "[u]nder the economic loss rule, plaintiffs who have only suffered an economic loss from a defective product . . . cannot recover economic losses premised on tort theories of recovery." *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters., Inc.*, 1015 Ohio App. 4, 2015-Ohio-4884, 50 N.E.3d 955, ¶16 (4th Dist.); *see also Midwest Ford, Inc. v. C.T. Taylor Co.*, 118 Ohio App. 3d 798, 801, 694 N.E.2d 114, 116–17 (1997) ("The common-law action in tort for purely economic loss from defective products, based upon implied warranty theory, is not available to commercial buyers."); *Trgo v. Chrysler Corp*., 34 F. Supp. 2d 581, 594 (N.D. Ohio 1998). "Courts applying Ohio law hold that where a contract spells out the parties' rights and responsibilities in a transaction for the sale of goods, parties seeking economic loss only must seek their recovery under the UCC's contractual remedies, not in tort or equity." *Young v. Carrier Corp.*, No. 4:14CV0974, 2014 WL 6617650, at *6–7 (N.D. Ohio Nov. 21, 2014) (holding the plaintiff was unable to recover for economic loss in tort or equity where she had a contractual remedy). However, Ohio courts have held that a commercial or non-commercial consumer may maintain tort claims against a manufacturer, *not in privity*, for purely economic loss. *See Caterpillar Fin. Servs. Corp.*, 1015 Ohio App. 4, 2015-Ohio-4884, 50

N.E.3d 955, ¶31 (emphasis in original); *see also Ohio Dep't of Adm. Serv. v. Robert P. Madison Int'l., Inc*., 138 Ohio App. 3d 388, 741 N.E.2d 551, 558 (10th Dist. 2000) ("this court finds that a consumer, commercial or not, can maintain a claim for breach of implied warranty/strict liability against a manufacturer, not in privity, for purely economic loss.").

In *HDM Flugservice GmbH v. Parker Hannifin Corp*., the Sixth Circuit discussed the evolution of the approach to the economic loss rule under Ohio law. *See* 332 F.3d 1025, 1029 (6th Cir. 2003). The court stated, "Ohio developed its approach to the economic loss rule in two major stages." *Id*. "Ohio initially rejected the rule and allowed tort recovery for economic losses." *Id.* Then, in *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co*., 42 Ohio St. 3d 40, 537 N.E.2d 624, 635 (1989) the Ohio Supreme Court applied the economic loss rule to parties in privity of contract, and held that "if the parties have a contractual relationship, they may not sue in strict liability or implied warranty for their economic damages, but instead must rely on the Uniform Commercial Code's ('U.C.C.') contractual remedies." *Id*. The court noted that "[a]mong commercial parties, the U.C.C. provides a comprehensive scheme for parties to recover their economic losses." *Id*. at 1030. The court further noted that "[p]ermitting commercial parties to recover economic losses in tort would allow a purchaser to reach back up the production and distribution chain, thereby disrupting the risk allocations that have been worked out in the transactions comprising the chain." *Id*. (internal quotation marks omitted). The court held that applying the economic loss rule to the commercial transaction at issue in the case forced the plaintiff to "resort to contract law to recover its economic losses and thus g[ave] the parties the benefit of their bargain." *Id*. at 1030.

Plaintiffs allege that MBUSA issued one or more written warranties on particular items and the "defects and nonconformities exhibited by both vans" constituted a breach of MBUSA's

9

contractual and statutory obligations under the express and implied warranties. *See* ECF Doc. 1-1, Page ID# 8, 9. MBUSA admits that both the 2015 and 2016 vans came with a standard 4-year/50,000-mile limited warranty. ECF Doc. 4, Page ID# 25, 26. For purposes of this 12(c) motion and accepting well-pleaded factual allegations as true, the court finds that plaintiffs were in privity of contract with MBUSA with respect to the standard 4-year/50,000-mile limited warranties on the 2015 and 2016 vans. As commercial consumers in privity with MBUSA, plaintiffs cannot maintain tort claims against manufacturer MBUSA for purely economic loss. *See Chemtrol*, 537 N.E.2d at 635 ("a commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damages to other property the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence.")

Defendant's motion for judgment on the pleadings on Count II must be GRANTED.

## IV. Order

Mercedes-Benz USA, LLC's Motion for Partial Judgment on the Pleadings (EFC Doc. 15) is **GRANTED** with respect to: (i) the Count I and Count II claims asserted by Plaintiff Ovidiu Radu and, (ii) the Count II implied warranty in tort claim asserted by RHI. Therefore, the Count I and Count II claims asserted by Ovidiu Radu, are **DISMISSED WITH PREJUDICE**, and Count II is **DISMISSED WITH PREJUDICE** with respect Roxy Home Improvement, LLC.

**IT IS SO ORDERED.**

Dated: April 9, 2018

Thomas M. Parker
United States Magistrate Judge