IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROXY HOME IMPROVEMENT, LLC, ET AL. | Case No. 1:17-cv-01817 |
| Plaintiffs, | |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| MERCEDES-BENZ USA, LLC, | |
| Defendant. | **MEMORANDUM OF OPINION AND ORDER** |

**I.     Introduction and Procedural Background**

Plaintiffs Roxy Home Improvement LLC ("RHI") and Ovidiu Radu ("Radu") instituted this action against Mercedes-Benz USA, LLC ("MBUSA") on July 28, 2017 in Cuyahoga County Common Pleas Court. *See* ECF Doc. 1-1, Page ID# 6-11. Plaintiffs alleged causes of action for breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose under the Ohio Uniform Commercial Code ("UCC") (Count I) and breach of implied warranty of merchantability and of fitness for a particular purpose sounding in tort (Count II). *See* ECF Doc. 1-1, Page ID# 9-11. Plaintiffs alleged that 2015 Van and 2016 Mercedes Benz Sprinter model cargo vans ("the vehicles") RHI purchased from Mercedes-Benz of North Olmsted ("MBNO") "could not be utilized for the purposes intended by plaintiffs at the time of acquisition," were "worthless and/or substantially impaired," and the

"defects and nonconformities exhibited by both vans constituted a breach of contractual, statutory and/or common law obligations of [MBUSA]." *See* ECF Doc. 1-1, Page ID# 7-10.

Counts I and II alleged violations of Ohio statutory and common law, but MBUSA removed the case to this court under 28 U.S.C § 1441(a) and pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the complaint (ECF Doc. 1-1) could be read to indicate that the amount in controversy exceeds $75,000. *See* ECF Doc. 1.

Initially, MBUSA moved for partial judgment on the pleadings (ECF Doc. 15), contending that Radu lacked standing to assert his claims against MBUSA and because the economic loss doctrine barred plaintiffs' tort claims. *See* ECF Doc. 15, Page ID# 92. The court granted the motion and dismissed Counts I and II as asserted by Radu and Count II with respect to RHI. *See* ECF Doc. 21.

Now MBUSA seeks summary judgment on the remaining claims (ECF Doc. 22), asserting that RHI's Ohio Uniform Commercial Code claims fail as a matter of law because: (1) RHI cannot establish that any nonconformity exists; (2) RHI's claims related to the 2015 van are moot; and (3) because RHI lacks privity with MBUSA. *See* ECF Doc. 22, Page ID# 137-38. RHI responded in opposition to MBUSA's motion on June 23, 2018 (ECF Doc. 23) and MBUSA filed its reply on August 6, 2018. *See* ECF Doc. 24. This matter is ripe for adjudication.

**II.     Background and Procedural History**

The following facts from the Rule 56 evidence are undisputed. On January 28, 2016, RHI purchased a 2015 Mercedes-Benz Sprinter Cargo Van from Mercedes-Benz of North Olmsted bearing the vehicle identification number WD3PE8DC3F5990795 (the "2015 van"). ECF Docs. 1-1, 22-1, 23-1, Page ID# 7, 153, 172. The 2015 van came with a standard 4-

year/50,000-mile limited warranty.[1] ECF Doc. 4, Page ID# 25. MBNO evaluated and or repaired the 2015 van multiple times between November 2015 and March 2017. *See* ECF Doc. 23-1, Page ID# 173-82. RHI alleges that the 2015 van had the following "defects and nonconformities": the check engine light came on multiple times; rust spots; poor acceleration; weak belt tension; "leaking oil"; missing screw; replacement of valve and high pressure fuel pump; and issues with the coolant pump and fuel pressure. *See* ECF Doc. 22-2, Page ID# 156-57.

On or about April 11, 2017, RHI returned to Mercedes-Benz of North Olmstead and traded in the 2015 Van for a 2016 Mercedes-Benz Sprinter Cargo Van bearing the vehicle identification number WD3PE7DD8GP350221 (the "2016 van"). ECF Doc. 1-1, 4, 22-3, 23-1, Page ID# 8; 26, 161, 183. The 2016 van also came with a standard 4-year/50,000-mile limited warranty. ECF Doc. 4, Page ID# 26. RHI alleges that the 2016 van had the following defects: the check engine light came on multiple times; "leaking oil"; high fuel pressure; and rust spots. *See* ECF Doc. 22-2, Page ID# 157. RHI alleges that the 2016 van was unavailable for six weeks while being repaired following illumination of the check engine light, because "[e]ach time a load was placed on [the van] the engine error codes returned." *Id*. RHI also alleges that it was denied service, "insulted and told never to return" to MBNO, denied warranty-covered service" at "MB Bedford"; and received "different reports from MB Akron and MB Bedford." *Id*.

### III. Law and Analysis

MBUSA argues that RHI's claims for breach of warranty under the UCC fail as a matter of law because RHI cannot satisfy the elements for breach of an express warranty under the Ohio Revised Code and because RHI lacks the necessary privity with MBUSA to bring a contractual

---

[1] Although both plaintiff and defendant acknowledge limited warranties were issued respecting the 2015 and 2016 vans, neither party chose to place the warranty documents into the Rule 56 evidence.

implied warranty claim. *See* ECF Doc. 22, Page ID# 143. RHI counters that its express warranty claims do not fail as a matter of law because RHI can establish that a non-conformity exists which has substantially impaired RHI's use of the vehicles and RHI's claims related to the 2015 van are not moot. *See* ECF Doc. 23, Page ID# 162-63. RHI also argues its implied warranty claims do no fail as a matter of law because RHI does not lack privity of contract with MBUSA. *Id*. at 163.

To increase clarity and make the analysis more efficient, the court will address these issues in a different order than that MBUSA raised in its motion.

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), courts shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Temple v. Fleetwood Enterprises, Inc*., 133 F. App'x 254, 260 (6th Cir. 2005). "Summary judgment is appropriate when, construing the facts and drawing all reasonable inferences in favor of the nonmoving party, there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law." *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 559 (6th Cir. 2016) (citing *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016)). A moving party may meet its burden on summary judgment by "pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Barnhart v. Pickerel & Schaffer & Ebeling Co*., 12 F. 3d 1382, 1389 (6th Cir. 1993). "If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). "[T]he moving party may submit affirmative evidence that negates an essential element

4

of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

### B. RHI's Claims Related to the 2015 Van are Moot

MBUSA argues that RHI's claims regarding the 2015 van are moot because RHI no longer owns the 2015 van after trading it in on the 2016 van, and there is no ongoing controversy concerning the 2015 model. *See* ECF Doc. 22, Page ID# 148.gr

"Article III conditions the exercise of federal judicial power on the existence of a live, ongoing case or controversy." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). When a case loses its character as an actual, live controversy during its pendency, it becomes moot and the case is no longer within the jurisdiction of the federal courts, and therefore must be dismissed. *Id*. "In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted).

It appears that RHI argues that its claims regarding the 2015 van are not moot because a "Mercedes-Benz employee" named Jerry Green allegedly coerced Radu, RHI's agent, into trading in the 2015 van. *See* ECF Doc. 23, Page ID# 170. Specifically, RHI alleges that Mr. Green assured Radu when Radu traded the 2015 van that the 2016 van would perform up to his needs and that the issues affecting the 2015 van would not happen again with the 2016 van. *Id*.; see also ECF Doc. 23-3, Page ID# 189.

The court finds that RHI's argument regarding alleged assurances MBNO's employee made to RHI's agent Radu regarding the performance of the 2016 van fails to show that there exists an actual, live controversy with respect to the 2015 van. Rather, RHI has entirely failed to

5

make any argument concerning its claims regarding the 2015 van, itself. Accordingly, the court finds that RHI's claims regarding the 2015 should be dismissed.

### C. Whether a Defect or Nonconformity Exists in the Vehicles

MBUSA argues that RHI's claims for breach of warranty under the UCC fail as a matter of law because RHI cannot establish that a nonconformity exists with the vehicles. *See* ECF Doc. 22, Page ID# 143-44. Because there is no longer a case or controversy concerning the 2015 van, the court will focus its analysis on issues regarding the 2016 van.

In order to properly revoke acceptance of a purchased good, a buyer must satisfy the requirements of the revocation statute, Ohio Rev. Code Ann. § 1302.66. *See Gallagher v. WMK Inc.*, 9th Dist. Summit No. 23564, 2007-Ohio-6615, ¶ 14. Section 1302.66(A) provides:

> (A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
>
> (1) On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
> (2) Without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

Ohio Rev. Code. Ann. § 1302.66.[2] "In order to state an actionable claim of breach of warranty and/or violation of the Magnuson–Moss Act, a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *See Temple*, 133 F. App'x at 268. Although Ohio Rev. Code Ann. does not define "nonconformity," according to Section 1302.01(A)(12), a "conforming good" is one that is "in accordance with the obligations under the

---

[2] There is no evidence that RHI or Radu ever attempted to revoke acceptance of either van.

contract." *See* Ohio Rev. Code Ann. § 1302.01(A)(12). For a good to be "non-conforming" it must substantially impair the product's value to the buyer. *See* Ohio Rev. Code Ann. § 1302.66(A). For a problem to substantially impair the use, safety, or value of a motor vehicle to the consumer, the problem must be a "major defect." *See Royster v. Toyota Motor Sales, U.S.A., Inc.*, 92 Ohio St. 3d 327, 2001-Ohio-212, 750 N.E.2d 531, 535. "[G]oods are not generally found to be nonconforming for trivial defects or defects which may easily be corrected." *Iams v. DaimlerChrysler Corp.*, 174 Ohio App. 3d 537, 2007-Ohio-6709, 883 N.E.2d 466, 480, ¶ 60 (internal quotation marks omitted). An objective standard is applied to determine whether an alleged defect substantially impaired the use, value, or safety of a plaintiff's vehicle. *See Danan v. Am. Honda Motor Co.*, No. 1:17 CV 260, 2018 WL 1000055, at *7 (N.D. Ohio Feb. 21, 2018) (colleting cases); *see also Iams v. DaimlerChrysler Corp.*, 174 Ohio App. 3d 537, 2007-Ohio-6709, 883 N.E.2d 466, 477, ¶ 45

The parties dispute whether a non-conformity exists within the 2016 van. MBUSA argues that RHI cannot establish a breach of express warranty claim because it never experienced any serious defect with the vehicle, has provided no objective evidence, and encountered only "trivial complaints" that are not considered nonconformities under Ohio warranty law. *See* ECF Doc. 22, Page ID# 145. RHI counters that the issues affecting the vehicle are "beyond trivial defects" because the "issues have not been easily resolved." *See* ECF Doc. 23, Page ID# 167. MBUSA and RHI each filed unauthenticated exhibits with their briefs, but neither challenged the other's evidence on this ground. The court will assume, without deciding, that the documents attached to the parties' briefs complied with Fed. R. Civ. P. 56.

The parties cite cases involving claims brought under Ohio's Lemon law, Ohio Rev. Code Ann. § 1345.71, *et seq*. and the federal Magnuson–Moss Warranty Act (MMWA), but not the Ohio UCC implied warranty statute, Ohio Rev. Code Ann. § 1302.66. "The Magnuson–

Moss Act is the federal statute that sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products." *Temple v. Fleetwood Ents., Inc*., 133 F. App'x 254, 268 (6th Cir.2005) (citing 15 U.S.C. 2301-2312). "The Act establishes a federal right of action for consumers to enforce written or implied warranties against suppliers, warrantors, or service contractors." *Whitt v. Mazda Motor of Am., Inc.*, 5th Dist. Stark No. 2010CA00343, 2011-Ohio-3097, 2011 WL 2520147, ¶ 23.

> The elements of an Ohio breach of warranty claim are identical to the elements of a Magnuson–Moss Warranty Act claim . . . . To state a claim for a violation of the Magnuson–Moss Warranty Act or breach of warranty, the plaintiff must show that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts. [T]he applicability of the Magnuson–Moss Act is directly dependent upon a sustainable [state law] claim for breach of warranty.

*Danan v. Am. Honda Motor Co*., No. 1:17 CV 260, 2018 WL 1000055, at *10 (N.D. Ohio Feb. 21, 2018) (quoting *Ultimax, Inc. v. Mercedes–Benz USA, LLC*, 2008 WL 974036 (S.D. Ohio April 8, 2008)). "The Ohio Lemon Law places a duty upon the manufacturer of a new motor vehicle to 'make any repairs as are necessary to conform the vehicle to [its] express warranty' within the first year, or 18,000 miles, whichever comes first." *Temple v. Fleetwood Enterprises, Inc.*, 133 F. App'x at 261 (quoting Ohio Rev. Code Ann. § 1345.72(A)).

In a case involving Ohio's Lemon law, Ohio Rev. Code Ann. § 1345.73, one court stated "Ohio's appellate courts have held that, as a matter of law, nonconformities do not include intermittent groaning, grinding noises, vibrations, or other complaints that did not affect the 'engine, drive train, or mechanical functioning of the automobile." *See Benit v. Mercedes Benz USA, LLC*, No. 07-4430, 2009 WL 751153, at *2 (6th Cir. Mar. 23, 2009) (internal quotation marks omitted, collecting cases).

In *Iams v. Daimler Chrysler Corp.*, the plaintiff purchased a new Jeep that had a rear lift-gate latch that would not stay closed and caused the vehicle to be noisy when driven. *Iams*, 883 N.E.2d at 468. Although an authorized Chrysler dealer repaired the problem on four occasions, the problem re-occurred shortly after being repaired. *Id*. The plaintiff sued Chrysler for breach of express and implied warranties. *Id*. at 469. The court found that the one defect presented was not a serious or substantial impairment to the vehicle's use, value, or safety, because the defect was not serious in nature and could be easily circumvented. *Id*. at 554.

In *Danan v. Am. Honda Motor Co.*, the plaintiff sued American Honda Motor Corp., Inc. alleging that the vehicle he purchased was defective because it had various problems, including electrical issues, rattling or ticking noises in the roof area, and problems with a fuse. *See Danan v. Am. Honda Motor Co.*, N.D. Ohio No. 1:17 CV 260, 2018 WL 1000055, at *1-2 (N.D. Ohio Feb. 21, 2018). A dealership repaired the problems, but the vehicle was unavailable to use for over forty days during the first year of plaintiff's ownership. *Id*. at *2. The court found that "even if a plaintiff can establish that a vehicle is out of service for thirty or more calendar days, the plaintiff must nonetheless demonstrate that the vehicle was subject to a 'nonconformity.'" *Id*. at *4. The court denied the defendant's motion for summary judgment on the breach of warranty claims because there was a genuine issue of material fact as to whether a nonconformity existed. *Id*. at *8, 10. The plaintiff in *Danan* pointed to multiple repair records showing that a repair technician confirmed the car was making a noise and attempted to fix the problem. *Id*. The repair technician conducted "extensive" repair efforts, including replacing the sun roof drive assembly, adjusting the fixed roof support, and removing the panels in the car multiple times. *Id*. The plaintiff also provided expert testimony from an ASE Certified Master Technician who observed the noise when he test drove the car and who opined that the noise made operating the vehicle was very annoying and caused significant driver distraction. *Id*. at

9

*8-9. Based on the evidence as a whole, the court found that a reasonable juror could conclude that the vehicle suffered from a defect that substantially impaired its use. *Id*. at *9-10.

In the present case, RHI asserts that Radu took 2016 van for repairs on three occasions for issues including: the check engine light coming on multiple times; an oil leak; high fuel pressure; and rust spots. *See* ECF Docs. 22-2, Page ID# 157 and 23-3, Page ID# 189, ¶ 5. The repair records indicate that MBNO repaired or attempted to repair an oil leak on June 21, 2017. *See* ECF Doc. 23-1, Page ID# 184. A repair record from MB Bedford dated June 22, 2017 indicates that the 2016 van's check engine light was illuminated, potentially due to fault codes P0088FF and P0088E1 or because of an issue with high fuel pressure and water contaminated fuel, which the repair technician stated would not be covered under factory warranty. The record quoted a non-warranty repair estimate of $1,493.64 and stated "client declined to proceed with recommended repairs." *Id*. at 185. Another repair record indicates that during the period from June 27, 2017 to August 8, 2017, Mercedes-Benz of Akron ("MB of Akron") repaired the 2016 van following the illumination of the check engine light, the identification of the same fault codes that had been seen five days earlier, potentially due to issues with the high pressure fuel pump and rail pressure sensor. *See* ECF Doc. 23-2, Page ID# 186-188. RHI argues that the 2016 van suffered from a substantial impairment because MBNO was not able to properly diagnose the problem, and it took MB Akron 43 days to repair the issue. *See* ECF Doc. 23, Page ID# 168. However, the repair record from MB Akron indicates that the 2016 van's check engine light no longer illuminated after the repairs, and RHI has provided no evidence showing that the 2016 van suffered from any further issues.

RHI also asserts that its agent Radu was "yelled at and insulted" by an MBNO employee and ordered to never return to the dealership when he sought repairs for alleged problems with his 2016 van and that MB Bedford refused to honor the terms of the warranty and made RHI pay

for repair services. *See* ECF Doc. 23-3, Page ID# 189, ¶¶ 6-7. Radu also states that a "Mercedes-Benz" employee, Jerry Green, made certain assurances to him regarding the performance of the 2016 van. *Id*. at ¶ 5. The only evidence RHI presents of the alleged communications between MBNO or "Mercedes-Benz" employees and RHI are Radu's affidavit assertions. *See* ECF Doc. 23-3, Page ID# 189. MBUSA notes that RHI failed to conduct any depositions, identify an expert, or issue any subpoenas, and issued only one set of Requests for Admissions. *See* ECF Doc. 24, p. 2. While RHI's decision to forego extensive discovery does not doom its claims as a matter of law, the court does find that little weight should be given to Radu's self-serving affidavit. *C.f. Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that *will* be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such evidence submitted in opposition to a motion for summary judgment must be admissible." (internal quotation marks omitted)). Here, the statements attributed to Jerry Green are inadmissible hearsay, absent evidence that he was an employee or agent of MBUSA who was authorized to speak on its behalf. The court also gives no weight to the statements in Radu's affidavit that conflict with RHI's responses to MBUSA's discovery requests. *Compare* ECF Doc. 23-3, Page ID# 190, ¶ 10 *with* ECF Doc. 22-2, Page ID# 158.

The court finds that RHI has not identified a nonconformity in the 2016 van that substantially impairs the value of the vehicle to RHI. As an initial matter, the court notes that RHI's brief did not recite the terms of the express warranty it claims were breached, and it did not explicitly state what non-conformities it claims exist in the 2016 van. Rather, RHI states

> The 2016 Van suffered from such substantial impairment that subjected it to repair for 43 straight days. Trivial defects would not render a van inoperable for a period of six weeks. Moreover, the defects rendering the Van inoperable were of

11

> such a nature that neither Mercedes---Benz of North Olmsted nor Mercedes---Benz of Bedford were able to properly diagnose or resolve the issues that took Mercedes---Benz of Akron six weeks to repair.

*See* ECF Doc. 23, Page ID# 168 (internal citations omitted). "[E]ven if a plaintiff can establish that a vehicle is out of service for thirty or more calendar days, the plaintiff must nonetheless still demonstrate that the vehicle was subject to a 'nonconformity.'" See *Danan*, No. 1:17 CV 260, 2018 WL 1000055, at *4.

Further, RHI has admitted in its responses to MBUSA's discovery requests that RHI continues to drive the 2016 van for the same purpose for which RHI purchased it, namely for use in connection with business activities. *See* ECF Doc. 22-2, Page ID# 158-59. RHI also has admitted that it continues to drive the 2016 van in a similar fashion to what RHI did when it first purchased the 2016 van, despite Radu's self-serving statements to the contrary. *See id*. at 159. Courts have declined to find that a nonconformity existed in similar circumstance when a plaintiff continued to drive the allegedly non-conforming but fully operable vehicle. *See, e.g.*, *Iams*, 174 Ohio App. 3d 537, 2007-Ohio-6709, 883 N.E.2d at 477, ¶ 47 (noting that the vehicle remained operable and the complained of defect did not affect the mechanical functioning of the vehicle); *see also Benit v. Mercedes Benz USA, LLC*, No. 07-4430, 2009 WL 751153, at *4 (6th Cir. Mar. 23, 2009) (denying the plaintiff's Ohio Lemon Law claims where the plaintiff used the vehicle extensively and a witness testified that the vehicle was operable and had no performance problems).

Other than the Radu affidavit, the only evidence RHI provides in support of its opposition to MBUSA's motion are two repair records – one each from MB Bedford and MB Akron – regarding the check engine light illuminating, error codes repair technicians found, and the technicians' efforts to make the error codes no longer appear. *See* ECF Doc. 23-1, 23-2, Page ID# 184-88. These repair records merely show that MB Bedford and MB Akron diagnosed or

12

performed repairs on the 2016 van, but they do not show that 2016 van had a defect that made it unfit for the ordinary purpose for which it was used. *C.f. Miller v. DaimlerChrysler Motors Corp.*, No. 78300, 2001 WL 587496, at *5 (Ohio Ct. App. May 31, 2001) (finding the plaintiff "did not show that the noise and vibrations were caused by a defect simply by showing that repairs were performed free of charge under warranty"). Further, there is no evidence as to why MB Akron had the vehicle for 43 days. Plaintiff's assertion that the complexity of the repairs caused the long service time finds no support in the record evidence.

Based on a review of the totality of the record, and construing the evidence in a light most favorable to plaintiff, the court finds that a reasonable juror could not conclude that the 2016 van suffers from a defect that substantially impaired its value to RHI. Accordingly, MBUSA is entitled to summary judgment and RHI's Count I claim for breach of UCC express and implied warranties respecting the 2016 van must be dismissed.

### D. Whether RHI's UCC Claims for Breach of Implied Warranty Fail as a Matter of Law

RHI has alleged that MBUSA breached an implied warranty. *See* ECF Doc. 1-1, Page ID# 9. MBUSA contends this claim must fail because RHI and MBUSA were not in privity of contract. *See* ECF Doc. 22, Page ID# 149.

The Ohio Uniform Commercial Code governs claims for breach of implied warranty. *See Curl v. Volkswagen of Am., Inc.*, 114 Ohio St. 3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, ¶ 26. The Ohio UCC's implied warranty of merchantability and implied warranty of fitness for a particular purpose are not enforceable against manufacturers who are not in privity with the purchaser. *See Kuns v. Ford Motor Co.*, 926 F. Supp. 2d 976, 986 (N.D. Ohio 2013), *aff'd*, 543 F. App'x 572 (6th Cir. 2013). In *Curl*, the Supreme Court of Ohio explained

> [L]ongstanding Ohio jurisprudence provides that purchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with

> whom they are in privity. Having reviewed the authority in Ohio, as well as that of other jurisdictions, we see no compelling reason to stray from precedent. A claim for breach of implied warranty, though similar to a tort action, arises pursuant to the law of sales codified in Ohio's Uniform Commercial Code. The privity requirement, which remains absent in strict liability tort actions, allows sellers of goods to define their scope of responsibility and provides a greater degree of foreseeability regarding potential claimants. To permit a claimant to recover without establishing vertical privity blurs the distinction between contract and tort.

*Curl,* 871 N.E.2d 1141, 1147 (internal citations omitted). Thus, RHI must establish privity between itself and MBUSA to succeed on an implied warranty claim. "*Curl* stands for the well-accepted principle that there is no privity between a vehicle's manufacturer and the ultimate consumer because the dealer, generally, does not act as the manufacturer's agent." *Nicholson v. Jayco, Inc.*, No. 5:15-CV-2010, 2016 WL 5463215, at *17 (N.D. Ohio Sept. 29, 2016)

RHI has pointed to no evidence indicating that it was in privity with MBUSA. RHI's purchase was from MBNO, a Mercedes-Benz dealer, and no evidence indicates that the dealer was in an agent role in negotiating the 2016 van's sale on behalf of MBUSA. This lack of privity between RHI and MBUSA dooms RHI's implied warranties of merchantability and fitness for a particular purpose claims. *See Curl,* 114 Ohio St.3d at 272.

RHI argues that the court should find it is in privity of contract with MBUSA through an intermediary because MBUSA: "exert[s] a tremendous amount of influence and control over the policies of the dealerships that work under them"; "the dealerships as agents for the manufacturer are a source of substantial profit for the manufacturer"; and "the benefit of the bargain between dealership and manufacturer lies with the manufacturer." *See* ECF Doc. 23, Page ID# 170. A plaintiff made a similar argument in *Nicholson v. Jayco*. See No. 5:15-CV-2010, 2016 WL 5463215, at *17.

In *Nicholson*, the plaintiff contended that the parties were in sufficient privity under the principles of agency to support an implied warranty claim. *Id*. Like RHI, the plaintiff in

14

*Nicholson* advanced no evidence of any sort showing that the defendant exercised the requisite control over the intermediary that would transform the intermediary from a mere authorized dealer of the defendant's products into an agent. *Id*. The only Rule 56 evidence of record indicates that MBNO is only an authorized dealer of Mercedes-Benz products. Thus, there is no evidence of vertical privity between RHI and MBUSA, and MBUSA is entitled to judgment as a matter of law on RHI's claim for breach of implied warranties.

IV.     Order

Mercedes-Benz USA, LLC's Motion for Summary Judgment (EFC Doc. 22) is **GRANTED.** Roxy Home Improvement, LLC's Count I claim for breach of express and implied UCC warranties is dismissed with prejudice. Because this order disposes of all remaining claims in the case, the matter is dismissed with prejudice.

IT IS SO ORDERED.

Dated: August 24, 2018

Thomas M. Parker
United States Magistrate Judge